which he complains, but a denial of that allegation does not put the fact in issue.   See Lent v. N. Y. & H. R. Co., 130 N. Y. 504, 29 N. E. 988.

A consideration of the language used in the Code shows clearly the object of this provision. The complaint must state whether any other action has been brought to recover any part of the mortgage, and, if so, whether any part thereof has been collected, the clear intent being to compel the plaintiff to allege in the complaint the facts to show that no part of the mortgage has been collected; but, the mere maintenance of a former action not being a defense, the failure of the plaintiff to prove that no action had been commenced would not be a ground for refusing to award the plaintiff a judgment.   If the complaint had alleged that an action had been brought on the bond, but nothing had been recovered, the complaint would not have been demurrable, nor would such an allegation in an answer be a defense; but I think the proof upon the trial was sufficient to justify the finding that no action had been commenced in which any sum had been collected which was applicable to the payment of the amount due on the mortgage. · The evidence was that the amount specified in the bond had been actually paid to the mortgagor when the mortgage was executed; that the plaintiff had received a sum of money, a part of which was applicable to the payment of the principal of the bond; that the only sum that had been paid by the mortgagor to the plaintiff was the sum of $5,000, of which $4,136.89 was payable for interest and $681.11 was credited on the principal, leaving a net amount of principal due, after allowing that deduction, of $99,133.89.   This was direct proof that the plaintiff had received nothing on account of the principal, except this sum of $681.-11, which was credited upon the principal, and for the balance of the principal, with the other payments to which the plaintiff was entitled to judgment, judgment was awarded.   It seems to me, therefore, that this proof was sufficient to sustain the finding that no other proceeding had been instituted to collect the amount due upon this bond and mortgage, from which anything had been received which could be credited thereon, and that upon this the plaintiff was entitled to judgment. No case has been cited upon the construction to be given to section 1629 of the Code, as it does not appear that such a claim has ever been before made.

It follows that the judgment appealed from must be affirmed, with costs.   All concur.   ·

---

CENTRAL TRUST CO. OF NEW YORK v. PITTSBURG, S. & N. R. CO. et al.

(Supreme Court, Special Term, Erie County.   December 27, 1906.)

1. CARRIERS—INTERSTATE TRANSPORTATION—REGULATION.

The provision of the Hepburn act (Act Cong. June 29, 1906, 34 Stat. 584, c. 3591), that after May 1, 1908, it shall be unlawful for a railroad company to transport from state to state any commodity mined or produced by it or in which it may have an interest, applies to a railroad having termini in different states and transporting coal thereon from mines, the capital stock of which is owned by the railroad company, though all the coal mined by said railroad company is sold at the mine and title is passed before the coal is transported to another state.

2. RAILROADS—RECEIVERS—CONTINUATION OF BUSINESS—EXPENDITURES.

 That the Hepburn act applied to said railroad's business as conducted was not ground for granting a motion forbidding the receiver to issue certificates and expend money for opening and developing a new mine, and improving the line of the railroad, and making connections with another road, it not appearing that after the act of Congress would take effect the receiver might not be able to market all the coal within the state, or make advantageous disposition of the mining properties.

Action by the Central Trust Company against the Pittsburg, Shawmut & Northern Railroad Company and others. Motion on behalf of certain bondholders to modify orders of May 11 and 19, 1906, entered herein and affirmed by the Appellate Division on June 1, 1906, permitting the receiver in the above action to foreclose a mortgage to issue certificates in the sum of $1,000,000. Motion denied.

J. H. Metcalf, for the motion.

Frank Sullivan Smith and James McC. Mitchell, opposed.

POUND, J. The termini of the railroad of the defendant railroad company are located in New York and Pennsylvania, respectively. The mining properties controlled by it are in Pennsylvania. The railroad corporation is therefore engaged in interstate commerce. This court has heretofore passed upon the advisability and necessity of the expenditures which the receiver is permitted to make under the orders authorizing and regulating the issue of the receiver's certificates herein, and this application is based entirely upon the provisions of the interstate commerce act, commonly known as the "Rate Bill" or Hepburn act, which was passed by Congress June 29, 1906 (34 Stat. 584, c. 3591), and which took effect two months later.

The portion of said act bearing upon this application reads as follows:

 "From and after May first, nineteen hundred and eight, it shall be unlawful for any railroad company to transport from any State, Territory, or the District of Columbia to any other State, Territory or the District of Columbia, or to any foreign country, any article or commodity, other than timber and the manufactured products thereof, manufactured, mined or produced by it, or under its authority, or which it may own in whole, or in part, or in which it may have any interest direct or indirect except such articles or commodities as may be necessary and intended for its use in the conduct of its business as a common carrier."

The moving bondholders contend that the effect of this act is to prohibit after May 1, 1908, the operation of the coal properties as now operated by the railroad company, and they now apply to have the receiver's authority to issue certificates and expend moneys rescinded so far as relates to the following purposes:

Opening and developing new mine at Knoxdale and constructing 100
 miners' houses .................................................... $ 158,370
Improvements of line of railroad, Hyde to Shelvey Summit, and
 making connection with Brookville & Mahoning Railroad........ 405,000

—except so far as such expenditures have already been made.

It is submitted in the moving papers that if this act had been in force and before the court for its consideration when these orders were made, and if it had been known that the separation of the railroad property from these mining properties must be made by May 1, 1908, the court

would not have permitted the receiver to expend these amounts, especially the sum of $405,000, for the connection with the Brookville & Mahoning Road. The railroad company defendant owns all the stock of the mining companies defendants, and that stock is covered by the mortgage lien. The foregoing expenditures were authorized on the theory that they were necessary for the safe and present operation of the road, and that the value of the lien of the appellants would not be materially affected thereby. The moving parties state in their brief that they do not base their claim for the modification of these orders upon the ground that the expenditures authorized by said orders will be illegal, or that the money cannot be spent without violation of the said act of Congress. They claim that the court is warranted in now exercising its discretion and granting the modification merely because of changed conditions as to the future due to said enactment. The court should be reluctant, in the absence of clear and convincing reasons, not speculative in character, to exercise its discretion to modify orders made after careful consideration and affirmed by the Appellate Division. To justify a modification of said orders it should first appear that the Hepburn act above quoted applies to the facts disclosed in this case. In my judgment it does so apply. The section applies in spirit, if not in letter, equally to railroad companies and to receivers of such companies. It cannot be assumed that the state court would permit its officer to disregard the act, even if it had the power to do so. The railroad company owning, as it does, the entire capital stock of the mining companies, has an interest in the product of the mines. The coal is mined under its authority. Even if, as is set forth in the affidavits read in opposition to this motion, all the coal mined by the railroad company is sold at the mine, and all title thereto and interest therein of said railroad ceases before the railroad company transports said coal, the railroad company is forbidden by said act to both produce and transport it, and the act applies, the reason therefor not having ceased; i. e., the danger of concealed rebating, favoritism, and discrimination which arises when the railroad company both produces and transports the commodity. N. Y., N. H. & H. R. R. Co. v. Interstate Commerce Commission, 200 U. S. 361, 26 Sup. Ct. 272, 50 L. Ed. 515. The provisions of said act will, therefore, when it becomes operative, affect and regulate the business as now carried on by the receiver.

But it should also appear, to justify the relief sought, that, although the Hepburn act would apply to the present situation, the receiver cannot after said act takes effect practicably and profitably work the mines and market the coal without infringing its provisions. The act applies in this case only to the transportation of said coal by the railroad company from Pennsylvania into any other state. Congress has no power and has made no attempt to regulate commerce beginning and ending within the limits of a single state. If the coal may be delivered by the railroad company at its destination within the state of Pennsylvania, or, if not so delivered, may be delivered absolutely without further responsibility therefor, to connecting carriers within that state, the receiver can mine and market the coal without engaging in interstate commerce and so without violating the law. The prohibition is

not that no railroad company engaged in interstate commerce shall transport coal mined by it, but merely that no railroad company shall transport from one state into another state coal mined by it or under its authority, or in which it has an interest. The receiver in his answering affidavits establishes that it is possible profitably to mine and market the coal without also transporting it across the state line. But even if the receiver could not successfully operate the railroad and mining properties together without engaging in interstate commerce, it does not appear that the mining stock cannot be sold and profitably sold by the receiver prior to May 1, 1908, under the direction of the court, apart from the railroad itself, or that the value of the railroad and of the mines as separate properties will be less than their value as one property.

In the last analysis the sole question herein is whether the value of the mortgage lien will be diminished by such expenditures, by reason of the provisions of such act, and I find no facts established herein to justify such conclusion.

The moving parties also ask that the receiver be ordered to file a report showing the amount of certificates issued by him under the several orders of the court, together with the amounts expended by him and the purpose thereof. Such relief would be proper as ancillary to the modification of the original orders, but, independently thereof, it is not shown how the bondholders generally can be benefited by such information at this time. The receiver should not, in the absence of cause shown, be required to make such report in the midst of his proceedings under the orders.

Motion denied.